[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14664

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 14, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00201-CV-HLM-4

COMMON CAUSE/GEORGIA, et al.,

Plaintiffs,

THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE (NAACP), INC.,
through its Georgia State Conference of Branches,
EUGENE TAYLOR,
BERTHA BARRETT YOUNG,

Plaintiffs-Appellants,

versus

MS. EVON BILLUPS,
Superintendent of Elections for the Board
of Elections and Voter Registration for Floyd
County and the City of Rome, Georgia,
MS. TRACY BROWN,
Superintendent of Elections of Bartow County,
Georgia,
MR. GARY PETTY,
Member of the Board of Elections and Registration
of Catoosa County, Georgia,

MS. MICHELLE HUDSON,
Member of the Board of Elections and Registration
of Catoosa County, Georgia,
MS. AMANDA SPENCER,
Member of the Board of Elections and Registration
of Catoosa County, Georgia,
CATHY COX, Individually,
KAREN HANDEL,
In her official capacity as Secretary of State of
Georgia and Chair of the Georgia Elections Board,
STATE ELECTION BOARD, et al.,

                                    Defendants-Appellees.

                    _____

                         No. 08-10432

                    _____

              D. C. Docket No. 05-00201-CV-HLM-4

COMMON CAUSE/GEORGIA,
LEAGUE OF WOMEN VOTERS OF GEORGIA, INC.,
THE CENTRAL PRESBYTERIAN OUTREACH AND ADVOCACY
CENTER, INC.
GEORGIA ASSOCIATION OF BLACK ELECTED OFFICIALS,
INC.,
THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE (NAACP), INC. through its Georgia State Conference
of Branches,
GEORGIA LEGISLATIVE BLACK CAUCUS
CONCERNED BLACK CLERGY OF METROPOLITAN ATLANTA,
INC.,
the following qualified and registered voters under
Georgia law;
MRS. CLARA WILLIAMS,

2

Plaintiffs-Appellees-
Cross-Appellants,

NATIONAL COUNCIL OF JEWISH WOMEN, INC.,

Appellee-Cross-Appellant,

EUGENE TAYLOR,
BERTHA BARRETT YOUNG,

Plaintiffs-Appellees,

MR. TONY WATKINS, et. al.,

Plaintiffs,

versus

MS. EVON BILLUPS, Superintendent of Elections for
the Board of Elections and Voter Registration for Floyd
County and the City of Rome, Georgia, et al,

Defendants,

STATE ELECTION BOARD,
KAREN HANDEL,

Defendants-Appellants,
Cross-Appellees.

3

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(January 14, 2009)

Before BIRCH and PRYOR, Circuit Judges, and STROM,[*] District Judge.

PRYOR, Circuit Judge:

This appeal concerns whether the legitimate interest of the government of safeguarding the exercise of a civil right is outweighed by a corresponding burden of that right. Although this appeal does not involve the right to travel, e.g., United States v. Guest, 383 U.S. 745, 758, 86 S. Ct. 1170, 1178 (1966), a burden of air travel in contemporary society provides an apt comparison. Before an adult passenger can board an airplane for a commercial flight in the United States, the passenger must present to a federal official an identification card with a photograph of the passenger. The burden of that exercise assists the federal government in keeping passengers safe from physical harm. This appeal concerns whether a state government can use that kind of exercise to safeguard one of our most fundamental civil rights: the right to vote.

We must decide whether a law of Georgia that requires every voter who

_____

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

4

casts a ballot in person to produce an identification card with a photograph of the voter unduly burdens the right to vote. The statute also requires state officials to issue, free of charge, a photo identification card to any registered voter. The Georgia Conference of the National Association for the Advancement of Colored People and two individual voters filed this action to enjoin the enforcement of that law on the ground that it unduly burdens the right to vote in violation of the Fourteenth Amendment. The district court dismissed the action on the ground that the NAACP and voters lacked standing, but it alternatively ruled on the merits and denied the permanent injunction. Because we hold that the NAACP and voters have standing, we vacate the order that dismissed the action. We instead render judgment in favor of the election officials of Georgia. We conclude, based on the decision in Crawford v. Marion County Election Board, 128 S. Ct. 1610 (2008), which upheld a similar law in Indiana, that the burden imposed by the requirement of photo identification is outweighed by the interests of Georgia in safeguarding the right to vote. We also conclude that the NAACP and voters are prevailing parties as to a preliminary injunction against an earlier statute that charged a fee for a voter identification card, and we affirm the order that awarded them attorney's fees.

## I. BACKGROUND

5

Voters in Georgia were not required to present any proof of identity to vote until 1997, when the General Assembly enacted a statute that required voters to present identification to election officials to be admitted to the polls and allowed to vote. Several kinds of identification were allowed under that law, including a driver's license, birth certificate, a copy of a current utility bill, and a payroll check. Voters who were unable to produce acceptable identification were allowed to vote if they signed a statement under oath confirming their identity.

In 2005, the General Assembly amended the identification statute to require all registered voters in Georgia to present a government-issued photo identification to election officials to be admitted to the polls and allowed to vote in person. For voters who did not already possess an acceptable form of identification, the statute provided that voter identification cards could be obtained for a fee of $20 to $35. The legislation also eliminated the requirement that voters casting absentee ballots provide one of several statutory excuses to obtain an absentee ballot. The requirement of photo identification became effective on July 1, 2005, subject to preclearance under section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. Ga. Code Ann. § 21-2-417.

In September 2005, several organizations, including the NAACP of Georgia, and two voters, Tony Watkins and Clara Williams, filed a complaint against the

6

Secretary of State of Georgia and the superintendents of elections for several counties in Georgia, in their official and individual capacities, that challenged the Georgia Photo ID Act of 2005, Ga. Code Ann. § 21-2-417. The organizations and voters alleged that the statute imposed a poll tax in violation of the Twenty-Fourth Amendment and Equal Protection Clause, violated the Fourteenth Amendment, violated the Civil Rights Act of 1964 and section 2 of the Voting Rights Act of 1965, and violated the Georgia Constitution.

The organizations and voters sought, and the district court granted, a preliminary injunction to bar enforcement of the statute. The district court ruled that the organizations and voters had proved a substantial likelihood of success on the merits of their claims that the statute unduly burdened the right to vote and constituted a poll tax. Georgia appealed and moved the district court and this Court for a stay pending appeal, which both courts denied.

In 2006, during the pendency of the appeal, the General Assembly repealed the statute and enacted a new statute that requires voters to present a photo identification before voting in person. The new statute requires a voter to produce one of six kinds of photo identification to vote: a driver's license, a voter identification card, a U.S. passport, a government employee identification card, a U.S. military identification card, or a tribal identification card. The legislation also

7

requires each county to issue free of charge a "Georgia voter identification card," with a photograph of the voter, to any registered voter who does not have another acceptable form of identification. The identification cards can be obtained by producing evidence that the voter is registered to vote in Georgia and by swearing an oath that the voter does not have another acceptable form of identification. The statute also permits voters who vote in person but are unable to produce photo identification to cast a provisional ballot and return within forty-eight hours with valid identification. Voters may also vote by absentee ballot without presenting a photo identification unless the voter registered by mail without including photo identification and is voting for the first time.

The new statute divided the General Assembly along partisan lines. The new statute passed the Senate with thirty-two Republicans and no Democrats voting in favor and twenty-one Democrats and one Republican voting in opposition. The new statute also passed the House of Representatives with ninety-eight Republicans and thirteen Democrats voting in favor and sixty Democrats and no Republicans voting in opposition. Governor Perdue, a Republican, signed the bill into law, the Attorney General of the United States precleared the statute, and the new statute became effective before the 2006 primary and general elections.

In February 2006, in response to the passage of the new statute, the

organizations and voters amended their complaint to challenge both the repealed statute and the new statute under the state and federal constitutions, the Civil Rights Act of 1964, and the Voting Rights Act of 1965. The district court dismissed as moot the parts of the complaint about the repealed statute. The organizations and voters sought a preliminary injunction that the new statute was invalid on its face and as applied. The organizations and voters alleged that the requirement of photo identification imposed "an unauthorized, unnecessary, and undue burden on the fundamental right to vote of hundreds of thousands of registered Georgia voters."

The district court preliminarily enjoined the enforcement of the new statute, but limited the injunction to the July 2006 primary elections and associated run-offs, "reasoning that the 2006 Photo ID Act posed an undue burden on certain voters with respect to those elections." The district court stated that, pending education efforts initiated by the State, the requirement of photo identification might no longer be unduly burdensome in later elections, and it declined to extend the injunction to future elections. The district court also concluded that the organizations and voters did not have a likelihood of success on the merits of their complaint that the statute imposed an unconstitutional poll tax or violated the Civil Rights Act or the Voting Rights Act.

9

During the pendency of this litigation, a state court permanently enjoined the enforcement of the new statute as violative of the Georgia Constitution. See Perdue v. Lake, 647 S.E.2d 6 (Ga. 2007). The Supreme Court of Georgia later vacated the injunction and dismissed the action for lack of standing because the plaintiff, who was voting for the first time, did not need photo identification to vote in person and, alternatively, possessed a photo identification card issued by the Metropolitan Atlanta Rapid Transit Authority, which was acceptable under the statute. Id. at 7–8. While the injunction by the state court was extant, Georgia suspended all education efforts about the requirement of photo identification.

Georgia resumed its efforts to educate voters in early September 2006. The State mailed a letter to a list of voters who had been identified as not having a card or driver's license issued by the Georgia Department of Driver Services, informing them about the requirement of photo identification and the availability of free voter identification cards. The Secretary of State sent a memorandum and a copy of the letter to every county registrar and requested that the registrars distribute the letter to voters in the county. Georgia adopted a voter education program, which included distribution of letters to counties, civic groups, churches, and other groups. In September 2006, Georgia also resumed on radio and television broadcasts public service announcements about the requirement of photo

10

identification.

The organizations and voters sought another preliminary injunction barring enforcement of the statute during the special elections in September 2006. The district court ruled that the organizations and voters had proved a substantial likelihood of success on the merits of their complaint that the statute unduly burdened the right to vote in violation of the Fourteenth Amendment and enjoined the enforcement of the statute during the September elections. Again, the district court concluded that the organizations and voters were not likely to succeed on their complaint that the statute imposed a poll tax and violated the Voting Rights Act and the Civil Rights Act.

When it issued the preliminary injunctions, the district court expressed concern about the lack of knowledge among voters that photo identification was needed for in-person voting and that absentee voting requirements had changed, but Georgia later undertook "a serious, concerted effort to notify voters" of the new requirements for in-person and absentee voting. In 2007, the Secretary of State increased educational efforts about the requirement of photo identification and developed a three-phase plan to educate voters. Georgia mailed a second letter to voters without a driver's license in August 2007. The letter informed voters about the requirement of photo identification and the procedure for obtaining a free voter

11

identification card.  The letter was mailed to voters in the twenty-two counties that had elections scheduled for September 2007 who had been identified as not having a driver's license or having a license that had been suspended, cancelled, surrendered, denied, or revoked.  The letter was also mailed to voters who were identified as having an expired photo identification card issued by the Department of Driver Services.  Georgia also developed a brochure and postcards about the photo identification requirement to distribute to voters.  Other educational efforts included updated information on the state website, flyers, updated voting information guides, paid radio advertisements, posters, and outreach to non-governmental organizations.  Georgia developed a website about the requirement of photo identification, www.gaphotoid.com, and trained county registrars about the requirement and voter identification card procedures.

Georgia officials challenged the standing of the plaintiffs.  One of the named plaintiffs, Tony Watkins, was dismissed for lack of standing.  Before trial, Clara Williams, the lone individual plaintiff, was dismissed for lack of standing because she, like the plaintiff in Perdue, possessed a MARTA card, a valid form of identification under the statute.  At the request of the organizations and voters, the district court allowed two voters, Bertha Young and Eugene Taylor, to be joined as plaintiffs.

The district court held a bench trial at the end of August 2007. The only claim for relief at that trial was the complaint that the statute unduly burdens the right to vote in violation of the Fourteenth Amendment. The district court dismissed six organizations as plaintiffs, but allowed the NAACP and the individual voters, Young and Taylor, to proceed to trial. The court stated that it would reconsider the standing of Young, Taylor, and the NAACP at the end of trial.

On September 6, 2007, the district court dismissed the complaint for lack of standing and alternatively denied the request for a permanent injunction. The district court concluded that neither the NAACP nor the individual voters had standing. "In an abundance of caution," the district court alternatively addressed the merits of the controversy and determined that the interest of Georgia in preventing voter fraud outweighed the burden of the voters' rights.

The NAACP and voters sought attorney's fees and expenses for their challenge of the earlier statute that charged a fee for voter identification cards. The district court determined that the NAACP and voters were prevailing parties as to their challenge of that statute as a poll tax, and it awarded attorney's fees and expenses for the prosecution of that complaint. 42 U.S.C. § 1988. The district court refused to award attorney's fees regarding the other claims, including any

13

work done on appeal.

## II. STANDARDS OF REVIEW

We review issues of standing de novo. DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1301 (11th Cir. 2008) (per curiam). We review the alternative decision that the NAACP and voters were not entitled to a permanent injunction for an abuse of discretion. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). We review the underlying findings of fact for clear error and conclusions of law de novo. KH Outdoor, L.L.C. v. City of Trussville, 458 F.3d 1261, 1266 (11th Cir. 2006). We "review the district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing subsidiary findings of fact for clear error." Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 442 F.3d 1283, 1287 (11th Cir. 2006) (emphasis added).

## III. DISCUSSION

Our discussion is divided in three parts. First, we address whether the NAACP and voters have standing to challenge the requirement of photo identification. Second, we discuss whether the district court abused its discretion when it declined to enjoin the enforcement of the statute that requires photo identification. Third, we address whether the district court abused its discretion

14

when it awarded attorney's fees to the NAACP and voters for obtaining a preliminary injunction of the earlier statute.

*A. The NAACP and Voters Have Standing.*

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of proving standing." Bischoff v. Osceola County, Fla., 222 F.3d 874, 878 (11th Cir. 2000). "[E]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (internal quotation marks omitted). "And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992) (internal quotation marks omitted).

The requirements for standing, under Article III of the Constitution, are three-fold:

> First, the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury. Second, the injury must have been caused by the defendant's

15

complained-of actions. Third, the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision.

Fla. State Conference of NAACP v. Browning, 522 F.3d 1153, 1159 (11th Cir. 2008). An injury sufficient for standing purposes is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (internal citations and quotation marks omitted).

The parties dispute whether the NAACP and the individual voters have established an injury sufficient for standing. We conclude that both the NAACP and voters have standing. We address these parties separately.

1. The NAACP Has Suffered an Injury Sufficient To Confer Standing.

We have explained "that an organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." Browning, 522 F.3d at 1165; see Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S. Ct. 1114 (1982). Based on the reasoning of the Supreme Court in Havens, we ruled that the NAACP and another organization had standing to challenge a voting requirement in Florida because the organizations "reasonably anticipate[d] that they [would] have to divert personnel and time to educating volunteers and voters on compliance" with the new voting requirements. Browning, 522 F.3d at

16

1165–66. This effect on the operations of the organizations was a "concrete injury" sufficient to confer standing. Id. The district court did not have the benefit of our decision in Browning when it held that the NAACP lacked standing.

The record reflects that the NAACP is actively involved in voting activities and would divert resources from its regular activities to educate and assist voters in complying with the statute that requires photo identification. Edward DuBose, the president of the Georgia chapter of the NAACP, testified that the NAACP "is involved in voter registration, mobilization, and education." When DuBose testified in August 2007, the NAACP "ha[d] about [fifteen] to [twenty] voter registration drives scheduled" throughout Georgia. The NAACP is also involved in voter education, including providing a political forum, distributing literature, grading politicians on important issues, and voter mobilization, including transporting voters to the polls. "In 2004, Plaintiff NAACP spent $20,000 to $30,000 on its voter empowerment initiative." The trial testimony reflects that the NAACP "uses [its] resources to maximize the ability to mobilize voters and educate voters and register voters." DuBose testified that the statute would have an effect on the voter registration efforts by the NAACP because it would have to divert volunteers and resources from "getting [voters] to the polls" to helping them obtain acceptable photo identification. DuBose's testimony that the NAACP

17

would have "to redistribute [its] resources" as a result of the requirement that voters produce photo identification to vote in person is undisputed. The record also establishes that the NAACP will have to divert funds to educate and assist voters with increased absentee voting, which is an option for voters who do not have an acceptable form of identification.

Because it will divert resources from its regular activities to educate voters about the requirement of a photo identification and assist voters in obtaining free identification cards, the NAACP established an injury sufficient to confer standing to challenge the statute. See Browning, 522 F.3d at 1164. As in Browning, the NAACP "cannot bring to bear limitless resources" and the diversion of its resources to address the requirement of a photo identification will cause its "noneconomic goals [to] suffer." Id. at 1166. Because we conclude that the NAACP has standing on its own behalf, we need not address whether it has associational standing under Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 342, 97 S. Ct. 2434, 2441 (1977).

2. Taylor and Young Have Suffered an Injury Sufficient To Confer Standing.

The individual voters also have standing. Young and Taylor suffered a sufficient injury because they are registered voters who do not possess an acceptable photo identification and would "be required to make a special trip to the

18

county registrar's office that is not required of voters who have driver's licenses or passports." The district court rejected this argument and concluded that neither Young nor Taylor established that they have suffered, or were in imminent danger of suffering, an injury in fact because each testified that they could and would obtain a free voter identification card if the statute were enforced. The district court determined that the inconveniences Young and Taylor would encounter were insignificant and did not constitute an injury sufficient for standing, but we disagree.

For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 666, 113 S. Ct. 2297, 2303 (1993). Young and Taylor contend that requiring them to obtain a photo identification is a denial of equal treatment. Unlike voters who already have photo identification, Young and Taylor are required to obtain photo identification before they can vote, and the imposition of

19

that burden is an injury sufficient to confer standing regardless of whether Young and Taylor are able to obtain photo identification.  Id.

The slightness of their burden also is not dispositive.  The Supreme Court has rejected the argument that an injury must be "significant"; a small injury, "an identifiable trifle," is sufficient to confer standing.  United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 2417 n.14 (1973).  Young and Taylor have suffered an injury sufficient to confer standing.

Even if Young and Taylor possessed an acceptable form of photo identification, they would still have standing to challenge the statute that required them to produce photo identification to cast an in-person ballot.  "A plaintiff need not have the franchise wholly denied to suffer injury.  Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient."  Charles H. Wesley Educ. Found., Inc. v. Cox, 408 F.3d 1349, 1352 (11th Cir. 2005). Requiring a registered voter either to produce photo identification to vote in person or to cast an absentee or provisional ballot is an injury sufficient for standing.  The inability of a voter to pay a poll tax, for example, is not required to challenge a statute that imposes a tax on voting, see Harper v. Va. State Bd. of Elections, 383 U.S. 663, 668, 86 S. Ct. 1079, 1082 (1966), and the lack of an acceptable photo

20

identification is not necessary to challenge a statute that requires photo identification to vote in person. Because Young and Taylor, who are registered voters, would be required to present photo identification to vote in person, they have suffered a sufficient injury.

*B. The District Court Did Not Abuse Its Discretion When It Declined To Enjoin Permanently the Requirement of Photo Identification.*

The Supreme Court "has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction," but this right "is not absolute." Dunn v. Blumstein, 405 U.S. 330, 336, 92 S. Ct. 995, 1000 (1972). "[T]he States have the power to impose voter qualifications, and to regulate access to the franchise in other ways." Id. When this Court considers a challenge under the Fourteenth Amendment, it applies "more than one test, depending upon the interest affected or the classification involved." Id. at 335, 92 S. Ct. at 999.

The Supreme Court has rejected a "litmus-paper test" for "[c]onstitutional challenges to specific provisions of a State's election laws" and instead has applied a "flexible standard." Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S. Ct. 1564, 1570 (1983); Burdick v. Takushi, 504 U.S. 428, 434, 112 S. Ct. 2059, 2063 (1992); Crawford, 128 S. Ct. at 1616 n.8. "[A] court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its

21

rule, and then make the 'hard judgment' that our adversary system demands." Crawford, 128 S. Ct. at 1616. Under this flexible standard, a regulation that imposes a "severe" burden must be "narrowly drawn to advance a state interest of compelling importance," Burdick, 504 U.S. at 434, 112 S. Ct. at 2063 (internal quotation marks omitted), but "reasonable, nondiscriminatory restrictions" that impose a minimal burden may be warranted by "the State's important regulatory interests." Anderson, 460 U.S. at 788, 103 S. Ct. at 1571. "However slight [the] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." Crawford, 128 S. Ct. at 1616 (internal quotation marks omitted).

In Crawford, the Supreme Court applied this flexible standard and upheld a state law that required voters in Indiana to produce photo identification to vote in person. 128 S. Ct. at 1615–16. The Court weighed the burden imposed on voters against the interests of the state in "deterring and detecting voter fraud," correcting "maladministration" of the voter rolls, and "safeguarding voter confidence." Id. at 1617. The Court stated, "The application of the statute to the vast majority of Indiana voters is amply justified by the valid interest in protecting 'the integrity and reliability of the electoral process.'" Id. at 1624 (quoting Anderson, 460 U.S. at 788 n.9, 103 S. Ct. at 1570 n.9).

22

The NAACP and voters argue that the district court, which did not have the benefit of Crawford, failed to apply the flexible standard from Anderson and Burdick, but we disagree. Although the district court used some language associated with rational basis review, the district court identified the flexible standard from Burdick and Anderson and weighed the "'character and magnitude of the asserted injury' . . . against 'the precise interests put forward by the State.'" The district court applied the correct standard.

The NAACP and voters dispute whether Georgia put forth "relevant and legitimate state interests 'sufficiently weighty to justify the limitation'" imposed by the photo identification requirement, but we, like the district court, conclude that Georgia invoked weighty interests. Both before the district court and on appeal, Georgia asserted that the requirement of photo identification "is designed to curb voting fraud." "A State indisputably has a compelling interest in preserving the integrity of its election process." Purcell v. Gonzalez, 549 U.S. 1, 4, 127 S. Ct. 5, 7 (2006) (internal quotation marks omitted). As the Supreme Court stated in Crawford, "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." 128 S. Ct. at 1619. Georgia has an interest in preventing election fraud that "provides a sufficient justification for carefully identifying all voters participating in the election process." Id. In

23

Crawford, the Supreme Court explained that the requirement of photo identification also serves the related interests of correcting the maladministration of voter rolls and promoting voter confidence. Id. at 1617.

The NAACP and voters argue that the district court erred by not requiring Georgia to prove both that in-person voter fraud existed and that requiring photo identification is an effective remedy, but Georgia did not have that burden of proof. Anderson requires a state to "identif[y the] . . . interests that it seeks to further by its" regulation, but Anderson does not require any evidentiary showing or burden of proof to be satisfied by the state government. 460 U.S. at 796, 103 S. Ct. at 1573–74. In Anderson, the Supreme Court considered the interests posited by Ohio – voter education, equal treatment of all candidates, and political stability – but did not discuss any record evidence in support of those stated interests. See id. at 796–806, 103 S. Ct. at 1574–79. Nor do the more recent decisions in Burdick, 504 U.S. 428, 112 S Ct. 2059, and Crawford, 128 S. Ct. 1610, place an evidentiary burden on the state when defending a voting regulation. The record in Crawford "contain[ed] no evidence of any [in-person voter] fraud actually occurring in Indiana at any time in its history," but this lack of evidence did not negate the interest of Indiana in detecting and deterring voter fraud. 128 S. Ct. at 1619. The Supreme Court looked to the "flagrant examples of such fraud in other parts of the

24

country [that] have been documented throughout this Nation's history by respected historians and journalists, [the] occasional examples [that] have surfaced in recent years, and . . . Indiana's own experience with" absentee voter fraud. Id. (footnotes omitted). The Court also cited a report issued by the Commission on Federal Election Reform that stated, "There is no evidence of extensive fraud in U.S. elections or of multiple voting, but both occur, and it could affect the outcome of a close election." Id. at 1618. Even absent specific evidence of in-person voter fraud, the general history of voter fraud and the "real" risk that in-person voter fraud "could affect the outcome of a close election" was sufficient to support the interest of Indiana in deterring voter fraud. Id. at 1619. The Supreme Court did not require Indiana to prove specific instances of voter fraud, and we decline to impose that burden on Georgia. See Am. Civil Liberties Union of N.M. v. Santillanes, 546 F.3d 1313, 1323 (10th Cir. 2008).

The legitimate interest of Georgia in detecting and deterring voter fraud must be weighed against the burden of requiring photo identification to determine whether the interest is "sufficiently weighty to justify the limitation." Crawford, 128 S. Ct. at 1616 (internal quotation marks omitted). The ordinary burdens of producing a photo identification to vote, which the Supreme Court described as "arising from life's vagaries," do not "raise any question about the constitutionality

25

of" the Georgia statute. Id. at 1620. "The burdens that are relevant to the issue before us are those imposed on persons who are eligible to vote but do not possess a current photo identification that complies with the requirements of" the Georgia statute, particularly those who may have difficulty obtaining a photo identification. Id. at 1620–21.

The district court determined that the burden imposed on Georgia voters who lack photo identification was not undue or significant, and we agree. The NAACP and voters argue that the burden is "severe" and affects "between 5 and 10 percent of all registered voters," largely minorities, but the record tells a different story. The NAACP and voters are unable to direct this Court to any admissible and reliable evidence that quantifies the extent and scope of the burden imposed by the Georgia statute.

The NAACP and voters rely on a series of data matches that compared lists of registered voters with records from the Department of Driver Safety to identify voters who did not possess a driver's license or identification card issued by the department. The NAACP and voters argue that their data establish that between 289,000 and 505,000 voters lack a photo identification issued by the Department of Driver Safety and "[i]t is implausible that a significant number of these registered voters would have another form of approved photo ID." This argument fails.

26

The data relied on by the NAACP and voters are incomplete and unreliable. The data matches fail to account for other forms of identification that are acceptable under the statute, including the free voter identification cards. The lists also contain inaccuracies. The district judge, for example, erroneously appeared on one of the data match lists as not having a driver's license. As in Crawford, "on the basis of the evidence in the record it is not possible to quantify . . . the magnitude of the burden" imposed on voters who do not possess an acceptable photo identification. 128 S. Ct. at 1622.

The NAACP and voters also failed to prove that any individual would bear a significant burden. As the district court found, both Young and Taylor testified that they could and would obtain a free photo identification with little difficulty. The NAACP and voters, despite their best efforts, failed to identify a single individual who would be unable to vote because of the Georgia statute or who would face an undue burden to obtain a free voter identification card. As the district court stated, the inability to locate a single voter who would bear a significant burden "provides significant support for a conclusion that the Photo ID requirement does not unduly burden the right to vote."

The insignificant burden imposed by the Georgia statute is outweighed by the interests in detecting and deterring voter fraud. Because the burden on Georgia

27

voters is "slight," the state interest need not be "compelling . . . to tip the constitutional scales in its direction." Burdick, 504 U.S. at 439, 112 S. Ct. at 2066. The legitimate state interest in preventing voter fraud, as recognized in Crawford, is more than "sufficient to outweigh the limited burden" of producing photo identification. Id. at 440, 112 S. Ct. at 2067.

The NAACP and voters argue that the district court erred when it failed to consider whether the statute was "narrowly tailored" to prevent fraud or whether less restrictive alternatives existed, but this argument also fails. The district court refused to consider whether the statute was "narrowly tailored" or whether a less restrictive alternative existed because "[t]hose arguments . . . presuppose[d] that the Court [would] apply a strict scrutiny analysis." When the burden imposed is limited, the Supreme Court has not required a voting regulation to be narrowly tailored:

> [W]hen [First and Fourteenth Amendment] rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.

Burdick, 504 U.S. at 434, 112 S. Ct. at 2063 (internal citation omitted); see also Crawford, 128 S. Ct. 1610. Because the burden of producing photo identification

28

is not severe, the statute need not be narrowly drawn or the least restrictive alternative.

The NAACP and voters also argue that the statute was "adopted to gain partisan advantage," but the Supreme Court dismissed the relevance of partisan interests in Crawford. 128 S. Ct. at 1623–24. "[I]f a nondiscriminatory law is supported by valid neutral justifications, those justifications should not be disregarded simply because partisan interests may have provided one motivation for the votes of individual legislators." Id. at 1624. The interest of Georgia in detecting and deterring voter fraud is a "valid neutral justification[]" that this Court cannot ignore. See id.

The district court did not err when it determined that the legitimate interest of Georgia in preventing voter fraud justified the insignificant burden of requiring voters to present photo identification before they vote in person. See Crawford, 128 S. Ct. at 1623. Although the district court did not yet have the benefit of the decision of the Supreme Court in Crawford, the district court applied the decisions in Anderson and Burdick to presage the later decision in Crawford. The district court did not abuse its discretion when it denied the request of the NAACP and the voters for a permanent injunction.

*C. The District Court Did Not Abuse Its Discretion in Its Award of Attorney's Fees.*

29

Both sides challenge the decisions of the district court about attorney's fees. The district court awarded the NAACP and voters attorney's fees for their challenge of the earlier statute that charged a fee for a voter identification card. Georgia argues that the district court abused its discretion because the NAACP and voters are not "prevailing parties." 42 U.S.C. § 1988. The NAACP and voters cross-appeal and argue that the district court abused its discretion when it refused to award attorney's fees for appellate work related to the challenge of the earlier statute. We reject these arguments and conclude that the district court did not abuse its discretion.

1. The NAACP and Voters Are Prevailing Parties Entitled to Attorney's Fees.

Georgia contends that the NAACP and voters are not prevailing parties under section 1988 and are not entitled to attorney's fees, but we disagree. Georgia first argues that the NAACP and voters cannot be prevailing parties because the district court determined that they lacked standing. Because we decide that the NAACP and voters have standing, we need not address this argument of Georgia. We turn instead to the other argument of Georgia that the NAACP and voters are not prevailing parties because they did not succeed on the merits of their complaint.

"The touchstone of the prevailing party inquiry . . . is the material alteration

of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Sole v. Wyner, 127 S. Ct. 2188, 2194 (2007) (internal quotation marks omitted). This Court has interpreted this language to require either "(1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003) (per curiam) (internal quotation marks omitted) (emphasis omitted). We have stated that "a preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorney's fees." Taylor v. City of Fort Lauderdale, 810 F.2d 1551, 1558 (11th Cir. 1987). Although Taylor was decided under the "central issue" standard, which the Supreme Court disavowed in Texas State Teachers Ass'n v. Garland Independent School District, 489 U.S. 782, 791, 109 S. Ct. 1486, 1493 (1989), in favor of the "significant issue" test, the underlying rule that a preliminary injunction is a "material alteration of the legal relationship of the parties" remains good law.

The NAACP and voters are prevailing parties because the preliminary injunction they obtained materially altered their legal relationship with the election officials. The injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting. That injunction remained effective until

31

Georgia repealed the law at issue.

Georgia argues that the decision of the district court not to enjoin the current statute vitiated the earlier victory of the NAACP and voters, but we disagree. Georgia relies on the rule that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case," Sole, 127 S. Ct. at 2195, but that rule is inapplicable. As the district court explained, the preliminary injunction against the earlier statute was not "reversed, dissolved, or otherwise undone" by any judicial decision. Georgia instead repealed the enjoined statute.

## 2. The NAACP and Voters Are Not Entitled to Attorney's Fees for Appellate Work.

The NAACP and voters argue that the district court abused its discretion when it denied their request for attorney's fees for appellate work related to the challenge of the earlier statute. The district court determined that it was without authority to award fees for time spent on the appeal. The NAACP and voters argue that the rules of this Court should be interpreted to permit the district court to award costs associated with the appeal.

The district court lacked authority to award attorney's fees and costs for work performed before this Court. Rule 39-2 of this Court governs an award of attorney's fees and requires, absent statute or court order, the filing of a request in

32

this Court, not the district court:

> [A]n application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later.

11th Cir. R. 39-2(a). "It is long established in this circuit that this court has the discretion to award attorney's fees and costs for the work expended before it." Mills by Mills v. Freeman, 118 F.3d 727, 734 (11th Cir. 1997) (per curiam). "[A] district court is 'not authorized, by local rule or otherwise, to control the filing time or assessment of attorney's fees for services rendered on appeal.' If a party wishes to obtain fees on appeal, he or she must file a petition with the clerk of this circuit within fourteen days of the issuance of the opinion of this court." Id. (quoting Davidson v. City of Avon Park, 848 F.2d 172, 173 (11th Cir. 1988)).

The NAACP and voters argue that this Court should interpret its rules to permit the district court to award fees for appellate work, but we are unpersuaded. Rule 39-2(e) permits the district court to award attorney's fees in connection with an appeal following a remand for further proceedings:

> Remand for Further Proceedings.  When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court,

33

> request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

11th Cir. R. 39-2(e). The NAACP and voters urge this Court to interpret this rule to allow "a plaintiff who is ultimately successful to recover appellate fees from the district court in circumstances in which the Court of Appeals remands a case in an order that does not finally resolve the matter." This argument is wholly without merit. Rule 39-2(e) applies in the limited situation when a decision on remand is the result of a reversal on appeal. The preliminary injunction of the earlier statute was not reversed on appeal and does not fall within the plain language of this exception. The district court did not abuse its discretion when it refused to award the NAACP and voters attorney's fees related to the appeal of the preliminary injunction.

## IV. CONCLUSION

The order of September 6, 2007, that dismissed the complaint of the NAACP and voters is **VACATED**, and we **RENDER** judgment in favor of the election officials of Georgia. The order of December 27, 2007, that awarded attorney's fees to the NAACP and voters is **AFFIRMED.**