# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1725

———————————————

Richard Brakebill; Dorothy Herman; Della Merrick; Elvis Norquay; Ray Norquay; Lucille Vivier, on behalf of themselves,

*Plaintiffs - Appellees,*

v.

Alvin Jaeger, in his official capacity as the North Dakota Secretary of State,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

——————————

On Renewed Motion for Stay Pending Appeal

——————————

Submitted:  September 10, 2018
Filed:  September 24, 2018

——————————

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

We are presented with a motion filed by the North Dakota Secretary of State to stay an order of the district court that enjoined parts of the North Dakota elections

statutes. One aspect of the statutes requires a voter to present at the polls a valid form of identification that provides the voter's current residential street address. The district court enjoined the Secretary from enforcing this provision. The court required instead that the Secretary must deem a voter qualified if the voter presents identification that includes a voter's current *mailing* address, such as a post office box, that may be located in a different voting precinct from the voter's residence. We conclude that the Secretary has demonstrated a likelihood of success on the merits in his challenge to this aspect of the injunction, that the State would be irreparably harmed by the injunction during the general election in November, and that a stay should be granted after consideration of all relevant factors. We therefore grant the motion to stay the district court's order in relevant part.

North Dakota has no voter registration requirement, so a resident may appear at the polls on election day and cast a ballot without any previous expression of desire to vote. Election officials at the polls are charged with determining whether a person who appears is qualified to vote.

Effective August 1, 2017, the North Dakota legislature provided that a qualified elector must provide a "valid form of identification" to the proper election official before receiving a ballot. N.D. Cent. Code Ann. § 16.1-01-04.1(1). A valid form of identification is a driver's license or nondriver identification card issued by the North Dakota department of transportation or "[a]n official form of identification issued by a tribal government" to a tribal member residing in North Dakota. *Id.* § 16.1-01-04.1(3)(a)(2).

To qualify a voter to receive a ballot, an identification must provide the voter's (1) legal name, (2) current residential street address in North Dakota, and (3) date of birth. *Id.* § 16.1-01-04.1(2). If the identification does not include all three pieces of information, then the voter must provide the missing information by supplementing the identification with one of several documents: a current utility bill, a current bank

statement, a check issued by a federal, state, or local government, a paycheck, or a document issued by a federal, state, or local government. *Id.* § 16.1-01-04.1(3)(b).

If a prospective voter is unable to show a valid form of identification but asserts qualifications as an elector in a particular precinct, then the voter may mark a ballot, and the election officials must set it aside in a sealed envelope. *Id.* § 16.1-01-04.1(5). The voter then has six days to present a valid form of identification either to an official at the polling place before the polls close, or to an employee of the office of the election official responsible for the administration of the election. *Id.*

Six plaintiffs in a pending lawsuit against the Secretary challenged the 2017 statute on the ground that it violates the Equal Protection Clause of the Fourteenth Amendment and Section 2 of the Voting Rights Act. These plaintiffs, all Native Americans and residents of North Dakota, sued in January 2016 to enjoin a previous version of the North Dakota statute and obtained relief. After the legislature amended the law, the plaintiffs moved in February 2018 to enjoin the current statute.

The district court enjoined the Secretary from enforcing the requirement of § 16.1-01-04.1(2)(b) that a voter produce identification or a supplemental document with a "current residential street address," and ordered that the Secretary accept "another form of identification that includes either a 'current residential street address' or a current mailing address (P.O. Box or other address) in North Dakota." The court also ordered the Secretary to accept any form of tribal identification that sets forth a name, date of birth, and current residential street address *or* mailing address. Similarly, the court required that if a voter's identification does not include a current residential street address, then the Secretary must accept supplemental documents from a tribal government that include either a current residential street address *or* a mailing address. The court relied exclusively on constitutional grounds and did not address the Voting Rights Act.

-3-

In support of its orders, the district court stated as follows:

> The State has acknowledged that Native American communities often lack residential street addresses or do not have clear residential addresses. Nevertheless, <u>under current State law an individual who does not have a "current residential street address" will never be qualified to vote</u>. This is a clear "legal obstacle" inhibiting the opportunity to vote. The State can easily remedy this problem by simply eliminating the absolute need for a "current residential street address" and allowing for either a residential address, a mailing address (P.O. Box), or simply an address.

R. Doc. 99, at 8-9 (citations omitted).

The court also found that 4,998 otherwise eligible Native Americans (and 64,618 non-Native voters) did not possess a qualifying identification. The court cited "statistical data" showing that 19% of Native Americans lacked qualifying identifications. And the court found that 48.7% of Native Americans who lack a qualifying identification also lacked "the supplemental documentation needed," such that 2,305 Native Americans would not be able to vote in 2018 under the North Dakota statute. To remedy these concerns about obtaining identification, the court ordered the Secretary to accept various documents issued by a tribal authority to a tribal member. The Secretary does not seek to stay these portions of the injunction.

The Secretary has appealed the injunction and also moved to stay one aspect of the injunction. Specifically, the Secretary seeks to stay the district court's order that voters must be deemed qualified if they present identification or a supplemental document with a current *mailing* address rather than a current residential street address. Under Federal Rule of Appellate Procedure 8(a), we consider four factors in determining whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2)

-4-

whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The most important factor is likelihood of success on the merits, although a showing of irreparable injury without a stay is also required. *Brady v. NFL*, 640 F.3d 785, 789 (8th Cir. 2011).

The Secretary contends that he will succeed on appeal because none of the six plaintiffs has Article III standing to challenge the statute's requirement that a voter provide a current residential street address. The Secretary observes that each of the six plaintiffs has a current residential street address, and argues that the statute did not cause any of them to suffer an injury in fact. The district court concluded that the plaintiffs had standing to sue, because "the burden of having to obtain and produce an ID itself has been found sufficient to confer standing, regardless of whether the Plaintiffs are able to obtain an ID." *See Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009). The court reasoned that all of the plaintiffs were injured in fact by "the requirement to maintain a 'current residential street address,' and thus an interest in real property, and the burden to maintain an ID or supplemental documents to prove he or she has a 'current residential street address.'"

We conclude that at least one of the plaintiffs has standing to raise a facial challenge to the statute. While it is true that all six plaintiffs have a current residential street address, the statute at issue does not merely require a citizen to maintain a residential street address. The statute requires a voter to present a valid form of identification, or a supplemental document, that includes a current residential street address. Even where a person has a residential street address, the burden of obtaining a qualifying identification or supplemental document is sufficient to constitute an injury that gives a citizen standing to sue. *Id*. In this case, plaintiff Elvis Norquay presented evidence that he currently resides at a homeless apartment complex in Dunseith, but that his tribal identification lists a "prior" address in

Belcourt. To vote in the precinct where he currently resides, therefore, Norquay must either obtain a new form of identification with his current residential street address or a supplemental document that includes his current address. That burden is sufficient to give him standing to challenge the residential street address requirement.[1]

On the merits of the facial challenge to the statutory requirement of a residential street address, however, we conclude that the Secretary has established a likelihood of success on appeal. A plaintiff seeking relief that would invalidate an election provision in all of its applications bears "a heavy burden of persuasion," *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 200 (2008) (opinion of Stevens, J.), as facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-51 (2008). Even assuming that a plaintiff can show that an election statute imposes "excessively burdensome requirements" on *some* voters, *Crawford*, 553 U.S. at 202 (opinion of Stevens, J.) (internal quotation marks omitted), that showing does not justify broad relief that invalidates the requirements on a statewide basis as applied to *all* voters. As the lead opinion in *Crawford* explained, "[w]hen evaluating a neutral, nondiscriminatory regulation of voting procedure, we must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* at 203 (internal quotation marks and brackets omitted).

Here, the district court thought the statutory requirement to produce an identification with a current residential street address posed a legal obstacle to the right to vote for Native Americans, because Native American communities often lack residential street addresses. The Secretary disputes whether street addresses are truly

---

[1]It is unnecessary to address the broader theory of standing adopted by the dissent, *post*, at 12, that a requirement merely *to produce* a form of identification already in a voter's possession causes an injury in fact.

lacking in those communities, and complains that the district court mistakenly relied on outdated evidence about two counties that had not finished assigning addresses as of 2011. But even assuming that some communities lack residential street addresses, that fact does not justify a statewide injunction that prevents the Secretary from requiring a form of identification with a residential street address from the vast majority of residents who have residential street addresses.[2]

The plaintiffs argue that the call for a residential street address is "invidious on its face" because it dictates that every voter must have "an interest in property." The statute, however, does not require a voter to present identification that shows an interest in property. A person may reside at a street address without having an interest in the property where he resides: Elvis Norquay himself resides at a homeless shelter with a street address. Young adults living with parents and elderly parents living with children need have no interest in property. A voter need only show where he or she resides. North Dakota, having adopted a system that requires no advance

---

[2]The dissent posits that all state-issued forms of identification in North Dakota require payment of a fee, and that the State has therefore erected an unconstitutional barrier to voting. *Post*, at 14. The district court's "mailing address" injunction, however, does not relieve a voter of the need to obtain a valid form of identification; it merely allows use of a mailing address rather than a street address in conjunction with the valid form of identification. The disputed portion of the injunction, therefore, is not justified as a remedy for any barrier arising from state-imposed fees.

In any event, North Dakota law has provided since August 1, 2013, that a resident may obtain a nondriver identification card without payment of a fee. N.D. Cent. Code Ann. § 39-06-03.1(4). The district court said that the North Dakota department of transportation website revealed a fee for a nondriver identification card. The judicially-noticed website is not in the record, but even assuming that the website then provided for a fee, the current website shows—consistent with the statute—that a nondriver identification card is available without payment of a fee. N.D. Dep't of Transp., *ID Card Requirements*, https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (last visited Sept. 21, 2018).

voter registration, maintains a legitimate interest in requiring identification and a showing of current residence to prevent voter fraud and to safeguard voter confidence.[3]

*Crawford* left open the possibility that a subset of voters might bring as-applied challenges against a regulation, and that a court might have authority to enter a narrower injunction to relieve certain voters of an unjustified burden. *Compare id.* at 199-200 (opinion of Stevens, J.), *with id.* at 204-05 (Scalia, J., concurring in the judgment). *See Frank v. Walker*, 819 F.3d 384, 386-87 (7th Cir. 2016). The district court in this case, however, did not limit its injunctive relief to the six plaintiffs. The injunction applied across the board to all voters and effectively declared the street address requirement unconstitutional in all cases. By definition, therefore, an as-applied theory cannot support the district court's injunction. Each of the plaintiffs, moreover, has a current residential street address, so an injunction allowing voters to present identification with a mailing address rather than identification with a residential street address did not relieve any excessive burden of the statute as applied to *these plaintiffs*.

We are satisfied that the State would be irreparably harmed without a stay. If the Secretary must accept forms of identification that list only a mailing address, such

---

[3]The dissent, citing a North Dakota department of transportation website, asserts that a person must present one of six enumerated documents bearing her name to prove residence when obtaining a state identification card. *Post*, at 13-14. The same website, however, allows a person to prove a resident address by furnishing one of nine different documents, including a bank statement, credit card statement, pay stub, or school transcript/report card. N.D. Dep't of Transp., *Acceptable Proof of Residential Address*, http://www.dot.nd.gov/divisions/driverslicense/docs/ proof-of-address-documents.pdf (last visited Sept. 21, 2018). The governing statute requires only that a person provide "satisfactory evidence" of legal presence, and that the director of the department may require "proof of residence address," without limiting methods of proof. N.D. Cent. Code Ann. § 39-06-03.1(3).

as a post office box, then voters could cast a ballot in the wrong precinct and dilute the votes of those who reside in the precinct. Enough wrong-precinct voters could even affect the outcome of a local election. The dissent's suggestion that the State protect itself from this harm by using maps or affidavits would require North Dakota to reinstate self-certification methods that the legislature already deemed insufficiently reliable when it adopted the residential street address requirement. The inability to require proof of a residential street address in North Dakota also opens the possibility of fraud by voters who have obtained a North Dakota form of identification but reside in another State while maintaining a mailing address in North Dakota to vote. The dissent deems this impossible, because only a resident of the State is supposed to receive a form of identification, but the injunction prevents election officials from verifying that a voter with such an identification has a current residential street address in the State. Even if the State can prosecute fraudulent voters after the fact, it would be irreparably harmed by allowing them to vote in the election.

We have considered the timing of the motion and whether proximity to the general election in November 2018 precludes the entry of a stay that otherwise is warranted. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam); *Williams v. Rhodes*, 393 U.S. 23, 34-35 (1968). In this case, we denied a previous motion for stay based on timing when the briefing was completed only one week before the primary election on June 12, 2018, but provided that the Secretary could file a renewed motion for stay after briefing on the appeal was completed on July 17. The Secretary complicated the timing question by waiting until August 16 to file a renewed motion, but we conclude that there is still sufficient time before election activity to make a stay permissible. Although the Supreme Court sometimes frowns on changes in election procedure when they come too close to an election, *see Veasey v. Perry*, 769 F.3d 890, 892-95 (5th Cir. 2014), there is no universal rule that forbids a stay after Labor Day. *See Mich. State A. Philip Randolph Inst. v. Johnson*, No. 18A240, 2018 WL 4285989 (U.S. Sept. 7, 2018) (order denying application to vacate

stay); *Mich. State A. Philip Randolph Inst. v. Johnson*, No. 18-1910, 2018 WL 4214710 (6th Cir. Sept. 5, 2018) (order granting stay).

Election day is November 6, and early voting in North Dakota does not begin until fifteen days before then. N.D. Cent. Code Ann. § 16.1-07-15(2)(a). Any North Dakota resident who might have relied on the district court's order allowing a voter to present identification with a mailing addresses has more than a month to adapt to the statute's requirement to present identification, or a supplemental document, with a current residential street address. The Secretary also should have sufficient time to educate and train election officials about that single change; counsel assured us at oral argument on September 10 that the Secretary could do so. We are informed that absentee ballots will not issue until September 27, *see id.* § 16.1-07-04; N.D. Sec'y of State, *2018 North Dakota Election Calendar* at 11 (Nov. 2017), https://vip.sos.nd.gov/pdfs/Portals/electioncalendar.pdf (last visited Sept. 21, 2018), so no absent voter should have received a ballot based on an identification with current mailing address only.

The plaintiffs argue that if this court stays the district court's injunction on mailing addresses, then we should reinstate a different injunction entered by the district court in August 2016. That order enjoined the election statute as it read in 2015 and required the State to reinstate so-called "fail-safe" provisions that were repealed by the North Dakota legislature in 2013. Under those provisions, a voter could obtain a ballot by executing an affidavit declaring under penalty of perjury that the voter was a qualified elector in the precinct or by having a member of the election board or poll clerk vouch for the voter. No form of identification was required. In its order enjoining the 2017 statute, the district court granted the Secretary's motion to dissolve the injunction of the 2015 statute, because the earlier order was "moot."

The plaintiffs suggest that we should reinstate the affidavit option from the previous injunction, but that injunction was entered based on a challenge to a

-10-

different statute, and the district court granted a motion to dissolve it. The North Dakota legislature amended the 2015 statute in response to the previous injunction and added, among other things, the opportunity for a voter to cast a set-aside ballot and to provide a proper form of identification within six days. N.D. Cent. Code Ann. § 16.1-01-04.1(5). The district court did not suggest that the affidavit option was an appropriate remedy for any injury caused by the requirement to obtain and present a form of identification with a current residential street address under the 2017 statute. In any event, as discussed, the Secretary is likely to succeed on his argument that the record does not justify a statewide injunction of the residential street address requirement, so there is no basis for substitute relief of equivalent breadth.

For these reasons, the motion for stay pending appeal is granted. The portions of the district court's order requiring the Secretary to accept forms of identification and supplemental documents that include a current *mailing* address rather than a current residential street address are stayed pending disposition of this appeal or further order of the court. The Secretary does not move to stay the remainder of the injunction, and it remains in effect. The appeal remains under submission, and an opinion on the merits will be filed in due course. We have not relied on any exhibits submitted with the renewed motion for stay, response, or reply, so the pending motion to strike is denied as moot.

In its order granting injunctive relief, the district court highlighted its concern that under current state law, a resident who does not have a "current residential street address" will never be qualified to vote. No plaintiff in this case falls in that category. If any resident of North Dakota lacks a current residential street address and is denied an opportunity to vote on that basis, the courthouse doors remain open.

-11-

KELLY, Circuit Judge, dissenting.[4]

On several issues, I agree with the court's opinion. I agree that plaintiffs have standing regardless of whether they currently "possess[] an acceptable form of . . . identification," because the statute's requirement that they "produce . . . identification to cast an in-person ballot" constitutes an injury-in-fact. Common Cause, 554 F.3d at 1351. I also agree that the "courthouse doors remain open" to provide additional relief should other individuals who lack the necessary identification come forward before the November election.

But I would deny the motion to stay because (1) the Secretary has not made the requisite strong showing that he is likely to succeed on the merits, (2) the Secretary is unlikely to suffer irreparable injury absent a stay, (3) plaintiffs and other interested parties are likely to suffer substantial injury under a stay, and (4) the public interest favors continued injunctive relief. See Hilton, 481 U.S. at 776. For these reasons, I respectfully dissent from the grant of a stay.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [our] discretion." Nken v. Holder, 556 U.S. 418, 433–34 (2009). The first and most important requirement is that a stay applicant make a "strong showing that he is likely to succeed on the merits." Brady, 640 F.3d at 789 (quoting Hilton, 481 U.S. at 776). For several reasons, the Secretary has not overcome this hurdle.

First, as the court correctly notes, the issue is not that North Dakota law requires voters to maintain a current residential street address, it is that voters must obtain and maintain certain forms of identification reflecting that address. The district court found that all state-issued identification cards in North Dakota require

_____

[4]I concur in the denial of the motion to strike as moot.

payment of a fee. The Secretary has countered that state law requires the Department of Transportation to provide free non-driver's identification cards, but the evidence before the district court demonstrated that this was not North Dakota's actual practice. At least one plaintiff testified that she was charged a fee to obtain one of these cards in spite of the statute. The district court also found that the Department of Transportation's website stated that a fee is required to obtain the card. These factual findings are not clearly erroneous.[5]

In addition to incurring a cost, an eligible voter must also present certain documentation to obtain an identification card from the state. The governing statute allows the Department of Transportation to require "proof of residence address." N.D. Cent. Code § 39-06-03.1(3). Currently, the Department's website states, "All applicants must present proof of current name, date of birth, and legal presence in the United States." N.D. Dep't of Transp., Identification Requirements, https://www.dot.nd.gov/divisions/driverslicense/docs/proof-of-identification-documents.pdf (last visited Sept. 21, 2018). They must also provide their social security number, which they may be required to prove by presenting official documentation. Finally, "[p]roof of North Dakota residence address . . . may be

_____

[5]The district court properly took judicial notice of the state's official website. See Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 793 (8th Cir. 2016) (citing Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 648 (7th Cir. 2011), for "the authority of a court to take judicial notice of government websites"). The Secretary was on notice since at least 2016 that the district court might rely upon this website: plaintiffs cited to it in their initial motion for a preliminary injunction, and the Secretary did not object. See R. Doc. 44 at 10, 12. It appears that the Department of Transportation has since changed its website such that it no longer reflects a fee for those 18 years old or older. Compare N.D. Dep't of Transp., ID Card Requirements, https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (last visited Sept. 21, 2018), with N.D. Dep't of Transp., ID Card Requirements, https://web.archive.org/web/20180218061057/https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (archived Feb. 18, 2018).

required by presenting" at least one of the following documents, which "must contain [the applicant's] **name** and **current physical** residence address": (1) a government-issued property tax form; (2) a mortgage, lease, or rental document; (3) a homeowner's or renter's insurance policy; (4) a utility bill; (5) a non-cellular phone bill; or (6) a parent's proof of address for a minor child.[6]  Id. at 3.  Unless the individual is a minor (in which case voting is not an issue), each of these documents requires the individual to maintain some type of an interest in physical, residential property.

These facts, standing alone, would demonstrate that North Dakota has erected unconstitutional barriers for prospective voters.  See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670 (1966) ("[W]ealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned.").  But the district court made several other factual findings demonstrating that the burdens on certain groups of voters, especially Native Americans and the homeless, are excessive.  The court does not dispute that the district court concluded (based on unrebutted evidence) that at least 69,616 eligible voters—including 4,998 Native Americans—currently lack the identification required to vote.  That group comprises nearly twenty percent of the total number of individuals who vote in a regular quadrennial election in North Dakota.  See N.D. Sec'y of State, 2010-2018 Election Results, https://vip.sos.nd.gov/PortalList Details.aspx?ptlhPKID=62&ptlPKID=4 (last visited Sept. 21, 2018) (showing 349,945 ballots cast in 2016 general election).  And the district court further found that roughly half of eligible Native American voters lack proper supplemental

---

[6]The court cites a different document from the Department's website listing nine "[a]cceptable documents for proof of North Dakota resident address," but the document does not explain whether these can be used to obtain an identification card.  It would be speculation to suggest that this more expansive list supercedes the express requirements for obtaining an identification noted above.  At best, the issue is unclear.

-14-

documentation, such that "at least 2,305 Native Americans will not be able to vote in 2018 under the new law." Although some portion of those Native American voters may be able to obtain proper identification under the aspects of the district court's injunction not covered by the stay, it is likely that many eligible voters will still be disenfranchised.

That the election provision at issue burdens only some voters does not preclude relief. If the district court's injunction was indeed overbroad, the appropriate response would be to narrow it to cover only individuals who lack a valid form of identification reflecting a current residential street address. And the relief that plaintiffs originally requested was not as broad as what the district court provided. Plaintiffs asked the court to reinstate the "affidavit option" to allow individuals who could not show a valid form of identification to vote by executing an affidavit swearing to the individual's qualifications as a voter. As I understand it, the affidavit option under the first injunction would not be available to all voters, but only those who cannot produce one of the forms of identification required by the statute—that is, only those whose right to vote would be unconstitutionally burdened by the statute. These are exactly the sort of "as applied" remedies contemplated by Crawford. See 553 U.S. at 199–203 (opinion of Stevens, J.); see also Frank, 819 F.3d at 386–87 ("Plaintiffs now accept the propriety of requiring photo ID from persons who already have or can get it with reasonable effort, while endeavoring to protect the voting rights of those who encounter high hurdles. This is compatible with our opinion and mandate, just as it is compatible with *Crawford*.").[7]

---

[7] I do not read the court's opinion to foreclose these options, which would apply beyond the six plaintiffs. This court is not in a position to review the propriety of the affidavit option, because even though the district court reinstated the affidavit option in its first injunction and the Secretary did not appeal that decision, that injunction was dissolved upon the passage of new legislation and the granting of the second injunction.

-15-

The remaining stay factors do not favor the Secretary. The only irreparable injury North Dakota could face is the possibility that voters might cast a ballot in the wrong precinct under the district court's injunction. There is no evidence in the record properly before us that this outcome is likely. Cf. Brady, 640 F.3d at 789 ("The movant must show that it will suffer irreparable injury unless a stay is granted."). Furthermore, nothing in the district court's injunction requires a voter to vote in the precinct attached to his current mailing address. The injunction does not change the definition of "residence" used to determine the voter's precinct, see N.D. Cent. Code § 16.1-01-04.2(1); it modifies only the requirements of the voter's identification. Nothing in the injunction prevents an election official from accepting a North Dakota identification bearing a mailing address from a different precinct, and verifying that the voter is in the correct precinct by other reliable means—perhaps by using a map or an affidavit to confirm his "residence." See N.D. Cent. Code § 16.1-05-07(3) (requiring election officials to "direct an individual who is attempting to vote in the incorrect precinct . . . to the proper precinct and polling place").

It seems unlikely that the injunction would enable voter fraud by someone who resides outside North Dakota but maintains a P.O. Box within the state. In order to vote, such a person would still need either a tribal identification "issued by a tribal government *to a tribal member residing in [the] state*," id. § 16.1-01-04.1(3)(a)(2) (emphasis added), or an identification issued by the state itself, id. § 16.1-01-04.1(3)(a)(1). Neither of these documents could be issued to a non-North Dakota resident.

In contrast, the injury to plaintiffs and other North Dakota voters is likely to be severe and irreparable. "[T]he right of suffrage is a fundamental matter in a free and democratic society." Reynolds v. Sims, 377 U.S. 533, 561–62 (1964). "[T]he right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights," and therefore "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." Id. at 562. I

-16-

disagree that plaintiffs are unlikely to be injured simply because they all have residential street addresses. As the court notes, "the statute at issue does not merely require a citizen to maintain a residential street address," but to obtain and produce identification reflecting that address. And the court does not dispute that several plaintiffs testified that they lack a valid form of identification under the statute. As noted above, the evidence indicates that many other eligible voters will be disenfranchised absent further equitable relief.

The final stay factor is the interest of the public. We previously denied the Secretary's request for a stay in this very case because there was an election only a week away. And absentee voting for the November election begins in *less than* a week. To grant a stay now fails to properly weigh the unique "considerations specific to election cases" that apply when a party seeks to upset the status quo "just weeks before an election." Purcell, 549 U.S. at 4. The stay will require North Dakota to reevaluate its training of election officials, training which may again change should the district court enter further injunctive relief. See R. Doc. 45 at 12–15 (the Secretary explaining that revising election training materials takes several months). The confusion that may result from these "conflicting orders," Purcell, 549 U.S. at 4–5, could be easily avoided by keeping the injunction in place until resolution of the appeal after the November election.

For the foregoing reasons, I would conclude that the Secretary has not met his burden of establishing that a stay is warranted.

———————————————