# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1996

_____

Comprehensive Health of Planned Parenthood Great Plains, on behalf of itself, its patients, physicians and staff; Reproductive Health Services of Planned Parenthood of the St. Louis, on behalf of itself, its patients, physicians, and staff; Ronald Yeomans, on his own behalf and on behalf of his patients

*Plaintiffs - Appellees*

v.

Josh Hawley, in his official capacity as Attorney General of the State of Missouri; Dr. Randall Williams, in his official capacity as Director of Department of Health and Senior Services

*Defendants - Appellants*

Daniel Knight, in his official capacity as Boone County Prosecutor; Jean Peters Baker, in her official capacity as Jackson County Prosecutor; Dan Patterson, in his official capacity as Green County Prosecutor; Theresa Kenney, in her official capacity as Jasper County Prosecutor

*Defendant*s

------------------------------

Foundation for Moral Law

*Amicus on Behalf of Appellant(s)*

National Abortion Federation

*Amicus on Behalf of Appellee(s)*

Eagle Forum Education and Legal Defense Fund

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: March 15, 2018
Filed: September 10, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Invoking the Constitution to enjoin the laws of a state requires more than "slight implication and vague conjecture." Fletcher v. Peck, 10 U.S. 87, 128 (1810) (Marshall, C.J.). At a minimum, it requires adequate information and correct application of the relevant standard. Because we conclude that the preliminary injunction in this case was entered based on less than adequate information and an insufficient regard for the relevant standard, we vacate the preliminary injunction and remand.

I.

The roots of this case can be traced to 2007. That year, the Missouri legislature amended the statutory definition of "ambulatory surgery center" ("ASC") to include

most facilities that performed abortions.[1]  A number of consequences followed, two of which are at issue here.  The first flows from statutory language.  By law, all doctors who perform abortions at ASCs must be "privileged to perform surgical procedures in at least one licensed hospital in the community."  Id. § 197.215.1(2).  The implementing regulations have further refined the "in the community" requirement to mean a licensed hospital that is 15 minutes away.  Mo. Code Regs. Ann. tit. 19, § 30-30.060 (1)(C)(4).  We refer to this as the "Hospital Relationship Requirement."

The second consequence at issue flows from enacting regulations.  The Missouri Department of Health and Senior Services ("DHSS") has delegated authority to enact health and safety regulations for abortion facilities.  Mo. Rev. Stat. § 197.225.1.  Pursuant to that authority, the DHSS has adopted a number of physical design and layout requirements specifically for facilities that perform surgical abortions.  Mo. Code Regs. Ann. tit. 19, § 30-30.070(1) ("This regulation does not apply to abortion facilities that do not perform surgical abortions.").[2]  We refer to these regulations collectively as the "Physical Plant Regulations."  These requirements, however, are not fixed in stone.  Instead, they are waivable upon written request.  Id. § 30-30.070(2) ("Requests for deviations from requirements on physical facilities shall be in writing to the [DHSS].").  We refer to this specific provision as the "Waiver Provision."  The record contains one instance in normal

---

[1]The definition of ASC included "any establishment operated for the purpose of performing or inducing any second or third-trimester abortions or five or more first-trimester abortions per month."  Mo. Rev. Stat. § 197.200 (2007).  More recently, Missouri has amended Section 197.200 to separately define an "abortion facility" as any facility performing abortions.  Id. § 197.200.  That definitional change does not impact our decision here.

[2]The regulations were changed during the pendency of these proceedings to exempt facilities that only provided medicinal abortions.

course where a minor request was made—and granted—for waiver from a single design requirement.

## A.

This is not the first time these laws have been challenged. Prior to the current suit, Appellee Comprehensive Health of Planned Parenthood Great Plains ("Comprehensive Health") brought facial and as-applied challenges to the statutory classification of abortion facilities as ASCs almost immediately after the provision went into effect in 2007.[3] Comprehensive Health succeeded in its as-applied challenge only. The district court enjoined the ASC statutory classification (and attendant requirements) for two facilities Comprehensive Health operated: one in Kansas City and one in Columbia.

Comprehensive Health and the State of Missouri settled the lawsuit in 2010 ("2010 Settlement"). The parties agreed to modifications of the requirements of the Physical Plant Regulations for the Columbia facility and a complete waiver of the requirements for the Kansas City facility. And Comprehensive Health agreed to release any claims "whether or not now known or contemplated" that are "based on or arising out of the allegations in Lawsuits relating to licensure of the Columbia and [Kansas City] Centers."

## B.

The 2010 Settlement was not the last word, however. After the Supreme Court's decision in Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, as revised (June 27, 2016), Comprehensive Health sent a letter to DHSS calling both the

---

[3]Comprehensive Health was formerly known as Planned Parenthood of Kansas and Mid-Missouri, Inc.

Hospital Relationship Requirement and the classification of abortion facilities as ASCs "unconstitutional and unenforceable." It demanded that DHSS stop enforcing the provisions against Comprehensive Health facilities. This suit began shortly thereafter.

Unlike its initial suit, Comprehensive Health is joined here by Reproductive Health Services of Planned Parenthood of the St. Louis Region ("RHS"), and Dr. Ronald Yeomans—a gynecologist who wishes to provide abortions at Comprehensive Health facilities in Missouri. Together, Comprehensive Health and RHS represent every facility that provides or is seeking to provide abortions in Missouri: Comprehensive Health operates facilities in Kansas City and Columbia, and RHS operates a facility in St. Louis and has plans to operate in Springfield and Joplin. The complaint here sought declaratory and injunctive relief to roll back the 2007 amendment which classified (most) abortion facilities as ASCs. It also sought specific relief from the Hospital Relationship Requirement. Both the ASC classification and the Hospital Relationship Requirement were challenged on substantive due process and equal protection grounds.[4]

After evidentiary submissions and a brief hearing, the district court issued a slightly narrower preliminary injunction. It preliminarily enjoined enforcement of the Hospital Relationship Requirement—as well as certain associated criminal penalties for doctors who violate it—and the Physical Plant Regulations solely on substantive due process grounds. In doing so, it found that Hellerstedt "controls [its] ruling." Because of that, it refused to weigh any evidence of benefits of the provisions, likening Missouri's advocacy on this front to an "attempt[] to undermine Brown v. Board of Education, 347 U.S. 483 (1954)."

---

[4]The suit was brought against various Missouri officials in their official capacities. For ease, we refer to the state appellants collectively as "Missouri."

Missouri now seeks to vacate the preliminary injunction.

## II.

Our review of a preliminary injunction is layered: fact findings are reviewed for clear error, legal conclusions are reviewed de novo, and the "ultimate decision to grant the injunction" is reviewed for abuse of discretion. McKinney ex rel. NLRB v. S. Bakeries, LLC, 786 F.3d 1119, 1122 (8th Cir. 2015) (internal quotation marks omitted). In order to preliminarily enjoin state laws, a district court "must . . . make a threshold finding that a party is likely to prevail on the merits." Planned Parenthood Minn., N. D., S.D. v. Rounds, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc). Put another way, "without a likelihood of success, an injunction is not justified." Does v. Gillespie, 867 F.3d 1034, 1046 (8th Cir. 2017).

With this framework in mind, we proceed to review the district court's injunction with regards to the Physical Plant Regulations and Hospital Relationship Requirement separately.

## A.

Missouri first argues that the Physical Plant Regulations were improperly enjoined because the Appellees had not "ripened" their claims. Drawing on administrative law jurisprudence, they argue "[w]here a regulatory regime provides for variances, a constitutional challenge to those restrictions is not ripe until the challenger has sought—and been denied—a variance." So because none of the facilities run by Appellees had utilized the Waiver Provision, the district court's injunction of the Physical Plant Regulations was improper.

The main case they cite in support of this argument—Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725 (1997)—explicitly undercuts this point.

There, it was noted that "facial challenges to regulation"—the only challenges at issue here—"are generally ripe the moment the challenged regulation or ordinance is passed." Id. at 736 n.10. Missouri has not demonstrated why that general principle should not apply here.

In fact, it would make little sense to find an exception here. The constitutional question in this case turns on the law's "effect . . . on women seeking abortions." Hellerstedt, 136 S. Ct. at 2306 (alteration in original) (internal quotation marks omitted). It is a woman's substantive due process right that Appellees, as third-parties, are asserting. Singleton v. Wulff, 428 U.S. 106, 117 (1976) (noting it is the "constitutionally protected abortion decision" which a physician may "litigate" on a third-party basis). Stated differently, "[t]his suit is possible only because the [Supreme] Court has allowed abortion clinics and physicians to invoke a putative constitutional right that does not belong to them—a woman's right to abortion." Hellerstedt, 136 S. Ct. at 2321-22 (Thomas, J., dissenting). To hold that Appellees must "ripen" a facial constitutional claim, which they do not possess, would be incongruous with the fact that the holder of such a right could bring the same facial challenge without any avenue to "ripen" it. See Singleton, 428 U.S. at 118 (emphasizing providers "assert the rights of women patients"). We reject Missouri's argument.

This is not to say, however, that a facial challenge to the Physical Plant Regulations on substantive due process grounds is justiciable at the present moment. To be clear, while we have said that individual organizations or facilities need not apply for waivers to "ripen" a facial claim, that does not mean we can decide a facial challenge to the Physical Plant Regulations without information about the Waiver Provision. Here, there is scant evidence as to how the Waiver Provision actually operates. As noted above, the record contains only one instance of a request for a minor waiver in normal course. In that case, it was granted with a single page letter

from DHSS. In cases like this, the "[r]ules of justiciability" counsel against a decision "based upon [an] amorphous and ill-defined factual record." Renne v. Geary, 501 U.S. 312, 324 (1991).

Refraining from "premature" decisions on facial challenges is a proper exercise of judicial restraint. See, e.g., Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008) (holding courts should "[e]xercis[e] judicial restraint" to prevent "premature interpretations of statutes in areas where their constitutional application might be cloudy." (internal quotation marks omitted)). This is especially true when adjudicating the constitutionality of state laws. Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997) ("Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law."). And perhaps the decisive factor pointing towards restraint is the fact-intensive nature of the constitutional test here: the undue burden standard.

Hellerstedt made clear that the undue burden standard "requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." 136 S. Ct. at 2309. The standard is so intertwined with underlying facts that "later, concrete factual developments" can affect whether or not the *same* law violates the undue burden standard. Id. at 2305-06 (finding that *res judicata* did not bar claims because a pre-enforcement challenge was brought on a different factual record than the post-enforcement challenge at bar). As a result, the constitutional scrutiny required by the undue burden standard has been likened to a form of "cost-benefit analysis." Fourteenth Amendment-Due Process Clause-Undue Burden-Whole Woman's Health v. Hellerstedt, 130 Harv. L. Rev. 397, 404 (2016); see also Clare Huntington, The Empirical Turn in Family Law, 118 Colum. L. Rev. 227, 250 (2018) (noting that the undue burden standard is "fundamentally an empirical inquiry").

Appellees underscore just how "cloudy," Wash. State Republican Party, 552 U.S. at 450, the "cost-benefit analysis" is currently with respect to the Physical Plant Regulations, Fourteenth Amendment, supra, at 404. In their brief, they admit three of the five facilities in Missouri providing or seeking to provide abortions—the centers in Kansas City and Columbia operated by Comprehensive Health and the RHS facility in St. Louis—do not "need[] further relief from [the Physical Plant Regulations] in order to provide abortion." Appellee Br. 34.[5] Granted, for the Kansas City and Columbia centers, this is because they obtained waivers from DHSS after litigation and a settlement. But, the point still stands: if DHSS operates its waiver process with sufficient flexibility, the Physical Plant Regulations would not lead to "fewer doctors, longer waiting times, and increased crowding" such that it would constitute an undue burden. Hellerstedt, 136 S. Ct. at 2313. Because the record is practically devoid of any information on the mechanics of the Waiver Provision, a court has no way to make that judgment.

The district court nevertheless made such a judgment, and we conclude that in doing so it committed an error of law. "It would take a very hardy [DHSS] Director," according to the district court, "to agree voluntarily to establishment of abortion clinics . . . out of compliance with ASC standards." And so it enjoined the regulations on the presumption that a DHSS Director would act less than scrupulously on any waiver application.[6] Our starting point, though, is the polar opposite: "'[t]he

_____

[5]Appellees also concede that only one of the two remaining facilities is seeking to provide surgical abortions and thus only that facility will be subject to the Physical Plant Regulations. Appellee Br. 4 n.1 (noting that only Springfield facility is seeking to provide surgical abortion).

[6]The district court also suggested in a footnote that the law at issue in Hellerstedt contained a waiver provision for abortion facilities. Hellerstedt, however, noted that the law before it "neither grandfathers nor provides waivers for any of the facilities that perform abortions." 136 S. Ct. at 2315.

-9-

good faith of [state] officers and the validity of their actions are presumed.'" Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015) (second alteration in original) (quoting Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 353 (1918)). The district court's rationale is further called into question by the waiver granted by the DHSS in 2015—the only evidence in the record regarding the operation of the Waiver Provision in the normal course.

In sum, we believe a substantive due process challenge to the Physical Plant Regulations—governed by the "cost-benefit analysis" required by the undue burden standard—is not currently fit for judicial resolution given the paucity of evidence on how DHSS will grant waivers. Again, we emphasize this is distinct from the position Missouri has advocated. We are not holding that a facial claim must be "ripened." We simply hold that we lack sufficient information to make a constitutional determination on the Physical Plant Regulations. Any ruling now would mean "our disposition . . . would lack the clarity and force which ought to inform the exercise of judicial authority." Geary, 501 U.S. at 324. Furthermore, hardship would not be imposed by withholding constitutional judgment. Cf. Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014) (courts must assess "hardship to the parties of witholding court consideration" (internal quotation marks omitted)). No facilities currently providing abortions would be closed because of the Physical Plant Regulations. Cf. Hellerstedt, 136 S. Ct. at 2301 (imposition of regulations caused closure of more than ten abortion facilities). And currently it appears that only one prospective location (Springfield) is seeking to provide surgical abortions, meaning that the Physical Plant Regulations is pertinent only to that facility. See supra note 6. If that one facility applied for a waiver, we would have some semblance of a record as to how the DHSS exercises the Waiver Provision. In other words, we would not have to "wade through a quagmire of what-ifs"—if litigation is pursued—to assess the facial validity of the Physical Plant Regulations. Mo. ex rel. Mo. Highway & Transp. Comm'n v. Cuffley,

112 F.3d 1332, 1338 (8th Cir. 1997). Or a waiver application by the Springfield facility may mean that litigation is not pursued at all.

On remand, the district court should not consider a facial challenge on substantive due process grounds to the Physical Plant Regulations. That does not end the matter, though. The Appellees asked for broader injunctive relief from the statutory ASC classification, Mo. Rev. Stat. § 197.200 (2007), but the district court entered a less capacious injunction of only the Physical Plant Regulations. Broader relief is likely foreclosed because Appellees trained the complaint (and injunction arguments) solely on the Physical Plant Regulations. But, given the "narrow" nature of our review at this stage, we leave it to the district court to decide this question in the first instance. Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1041 (8th Cir. 2003).

## B.

We now shift to the Hospital Relationship Requirement. Unlike the Physical Plant Regulations, the Hospital Relationship Requirement operates by statute, is unwaivable, and is enforced by criminal penalty. The district court erred in enjoining it (and related criminal provisions) because the district court did not apply the plain language of Hellerstedt.[7]

---

[7]Missouri argues that Appellees lack standing to pursue a challenge to the Hospital Relationship Requirement if, as we have decided, the Physical Plant Regulations are non-justiciable. They argue that any challenge is not redressable because the Physical Plant Regulations act as an independent barrier to operating abortion facilities. Factually, that is not accurate given the limited scope of the Physical Plant Regulations which apply only to facilities providing surgical abortions. More importantly, as we emphasized earlier, this is a third-party facial challenge. The concern on facial review is whether "in a large fraction of the cases in which [the Hospital Relationship Requirement] is relevant, it will operate as a substantial

-11-

As noted in our prior discussion, Hellerstedt's rendition of the undue burden standard is fairly straightforward: it "requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." 136 S. Ct. at 2309. Indeed it emphasized there is "*an independent constitutional duty to review factual findings where constitutional rights are at stake.*" Id. at 2310 (internal quotation marks omitted). Thus, Hellerstedt did not find, as a matter of law, that abortion was inherently safe or that provisions similar to the laws it considered would never be constitutional. Instead, it held that the "District Court applied the correct legal standard" when it "weighed the asserted benefits against the burdens." Id. The district court here explicitly refused to "weigh[] the asserted benefits" stating that to do so "would be impermissible judicial practice."

In light of Hellerstedt the district court erred in so ruling. On remand, the district court should, at the very least, weigh the state's "asserted benefits." Despite the district court's assertions to the contrary, Hellerstedt's analysis of the purported benefits of the law at issue were, of course, related to what the law in that case regulated: abortion in Texas. And so the Supreme Court recognized that "before the act's passage, abortion in *Texas* was extremely safe." Id. at 2311 (emphasis added) (internal quotation marks omitted).[8]

---

obstacle to a woman's choice to undergo an abortion." Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 895 (1992).

[8]The district court observed that "Hellerstedt's factual conclusions were not confined to Texas" because the "majority relied on Wisconsin and Alabama case law and amicus briefs and materials unrelated to Texas." Hellerstedt cited other cases to show that its "answer is consistent with the findings of the other Federal District Courts." 136 S. Ct. at 2312. It cited those cases after weighing the benefits put forward by Texas as a way to show that its own analysis was "consistent," not supported, by those of other courts. In other words, Hellerstedt's reliance on similar cases did not excuse courts from weighing any purported benefits as the district court did here. Additionally, while Hellerstedt may have cited sources from outside of

No such determination about abortion in Missouri was made here. Perhaps there was a unique problem Missouri was responding to under its inherent "police power." See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals."). Such a problem may require a different response than what was needed in Texas, and the Hospital Relationship Requirement may be appropriate given "[Missouri's] legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient." Hellerstedt, 136 S. Ct. at 2309 (quoting Roe v. Wade, 410 U.S. 113, 150 (1973)). Or perhaps the Hospital Relationship Requirement is consistent with a more exacting medical regulatory scheme than that present in Texas. Cf. id. at 2315 (finding Texas regulated procedures similar to abortion less heavily which undercut its safety argument).[9] But, given no such inquiry was made—and no findings ascertained—we remand for the district court to do that which Hellerstedt instructed: "consider[] the evidence in the record—including expert evidence, presented in stipulations, depositions, and testimony" and then "weigh[] the asserted benefits against the burdens." Id. at 2310.

### III.

As a final note, we address the 2010 Settlement Agreement. To re-emphasize, only one current plaintiff, Comprehensive Health, was a party to that agreement. Whether Comprehensive Health stays in the suit or not does not affect the disposition of this case. RHS may properly maintain any of the remaining justiciable facial

Texas, those sources informed the benefit/burden analysis of the Texas law at issue.

[9]The district court made an attempt at some findings along these lines, but then suggested "[t]he record is not clear enough . . . to make findings."

-13-

claims on its own.[10]  The district court explicitly did not decide the issue.  While we note the broad language in the release, we "decline to decide" in the first instance "whether the release language bars [Comprehensive Health's] claims."  Lynch v. Nat'l Prescription Adm'rs, Inc., 787 F.3d 868, 874 (8th Cir. 2015).

## IV.

For the foregoing reasons, we vacate the preliminary injunction entered on May 2, 2017 in its entirety and remand for proceedings consistent with this opinion.

_____

_____

[10]The same attorneys represent Comprehensive Health, RHS, and Yeomans in this action.  Missouri does not press any argument on appeal that RHS is covered by the 2010 Settlement.