COLLOTON, Circuit Judge.
 

 This appeal arises from a challenge by six Native American plaintiffs to portions of North Dakota's elections statutes. North Dakota requires a voter to present a specific form of identification at the polls before receiving a ballot. That identification
 must provide, among other things, the voter's current residential street address. If a voter's identification is missing the required information, or if the information provided is not current, a voter may supplement with certain documents. Six plaintiffs sued the North Dakota Secretary of State, alleging that the provisions place an unconstitutional burden on the right to vote of many Native Americans. The district court agreed and enjoined the Secretary from enforcing certain statutory requirements statewide. The Secretary appealed. We conclude that the alleged burdens do not justify a statewide injunction, and we therefore vacate the district court's order.
 

 I.
 

 A.
 

 North Dakota has no voter registration requirement, so a resident may appear at the polls on election day and cast a ballot without any previous expression of desire to vote. Election officials at the polls are charged with determining whether a person who appears is qualified to vote. Before 2013, voters could establish their qualifications by using certain forms of identification. If a voter could not present proper identification, the voter was nonetheless permitted to cast a ballot after swearing an affidavit or upon vouching by a poll worker. In 2013, the North Dakota legislature enacted HB 1332. That law limited the types of acceptable identification and eliminated the affidavit and vouching options. The legislature further limited the list of acceptable forms of identification in 2015.
 

 The six appellees in this case originally filed suit in January 2016. Each plaintiff-appellee is a member of the Turtle Mountain Band of Chippewa Indians and a resident of North Dakota. The plaintiffs alleged that the voter identification requirements violated the Constitution of the United States and the North Dakota Constitution, as well as Section 2 of the Voting Rights Act. On August 1, 2016, the district court granted the plaintiffs' motion for a preliminary injunction. Citing statistical evidence, the court determined that the identification requirements imposed " 'excessively burdensome requirements' on Native American voters in North Dakota" that outweighed the State's asserted interests. The court concluded that the plaintiffs were likely to succeed on the merits of their federal constitutional claim and did not consider state law or the Voting Rights Act. The court enjoined the Secretary from enforcing the identification requirements statewide and required the Secretary to offer an affidavit alternative when a voter lacked proper identification. The Secretary did not appeal.
 

 The North Dakota legislature then modified the State's voting requirements once more. Effective August 1, 2017, the current provision requires qualified voters to provide "a valid form of identification" before receiving a ballot.
 
 N.D. Cent. Code Ann. § 16.1-01-04
 
 .1(1). The statute defines a "valid form of identification" as a driver's license or nondriver's identification card issued by the North Dakota department of transportation,
 

 id.
 

 § 16.1-01-04.1(3)(a)(1), or "[a]n official form of identification issued by a tribal government to a tribal member residing in this state."
 

 Id.
 

 § 16.1-01-04.1(3)(a)(2).
 

 For a voter to receive a ballot, the valid form of identification must provide the voter's (1) legal name, (2) current residential street address in North Dakota, and (3) date of birth.
 

 Id.
 

 § 16.1-01-04.1(2). If a voter's identification lacks any of those three items, the voter may still cast a ballot if she can provide the missing information
 using one of several supplemental documents: a current utility bill, a current bank statement, a check issued by a federal, state, or local government, a paycheck, or a document issued by a federal, state, or local government.
 

 Id.
 

 § 16.1-01-04.1(3)(b).
 

 A prospective voter who cannot provide a valid form of identification at the polls may mark a ballot that is set aside.
 

 Id.
 

 § 16.1-01-04.1(5). The voter then may present a valid form of identification to an official at the polling place before the polls close, or present such identification within six days to "an employee of the office of the election official responsible for the administration of the election."
 

 Id.
 

 B.
 

 In December 2017, the plaintiffs filed an amended complaint challenging the current provisions. The Secretary moved to dissolve the August 2016 injunction in light of the intervening change in law; the plaintiffs moved for a second preliminary injunction. The district court granted both motions, dissolving the August 2016 injunction as "moot" and enjoining the Secretary from enforcing parts of the current North Dakota provisions.
 

 The district court enjoined the Secretary from enforcing three statutory requirements. First, the court forbade the Secretary to enforce the requirement of § 16.1-01-04.1(2)(b) that a voter produce identification or a supplemental document with a "[c]urrent residential street address." The court ordered the Secretary also to accept "another form of identification that includes either a 'current residential street address' or a current mailing address (P.O. Box or other address) in North Dakota."
 

 Second, the district court ordered the Secretary to accept as a valid form of identification under § 16.1-01-04.1(3)(a)(2) "an official form of identification issued by a tribal government; the Bureau of Indian Affairs (BIA), any other tribal agency or entity, or any other document, letter, writing, enrollment card, or other form of tribal identification issued by a tribal authority," so long as it sets forth the voter's name, date of birth, and current residential street address or mailing address. The court noted that the Secretary already had interpreted the provision to allow these other forms of identification.
 

 Third, the district court ordered the Secretary to accept as valid supplemental documents under § 16.1-01-04.1(3)(b)(5) "any documents issued by a tribal government, the Bureau of Indian Affairs (BIA), other tribal agencies or authorities,
 
 or
 
 any other document, letter, writing, enrollment card, or other forms of tribal identification which provide the missing or outdated information." The court said that the Secretary was already accepting these documents too.
 

 In support of the residential street address portion of the injunction, the district court said the Secretary had acknowledged that Native American communities often lack residential street addresses. And, the court explained, "
 
 under current State law an individual who does not have a 'current residential street address' will never be qualified to vote
 
 ." The court thus thought the residential street address requirement was a "clear 'legal obstacle' inhibiting the opportunity to vote."
 

 The district court relied on statistical evidence to support the portions of the injunction expanding the acceptable valid forms of identification and supplemental documents. The court found that 4,998 otherwise eligible Native Americans (and 64,618 non-Native voters) did not possess a qualifying identification. The court cited evidence that 65.6% of those Native Americans also were missing at least one of the underlying documents needed to obtain a
 valid identification from the State. And the Court found that 48.7% of Native Americans who lack a qualifying identification also lacked "the supplemental documentation needed," such that 2,305 Native Americans would not be able to vote in 2018 under the North Dakota statute.
 

 The Secretary appealed, arguing that the plaintiffs lack standing to challenge the residential street address requirement, that the other two portions of the district court's injunction were unnecessary, and that the statewide injunction was improper because the plaintiffs had not established that the statute was invalid on its face. We granted the Secretary's motion for a stay of the residential street address portion of the district court's order pending appeal.
 
 Brakebill v. Jaeger
 
 ,
 
 905 F.3d 553
 
 , 561 (8th Cir. 2018).
 

 We now consider the merits of the appeal. In reviewing the issuance of a preliminary injunction, we consider the threat of irreparable harm to the movant, the likelihood that the movant will succeed on the merits, the balance between the harm to the movant and injury that an injunction would inflict on other parties, and the public interest.
 
 Dataphase Sys., Inc. v. C L Sys., Inc.
 
 ,
 
 640 F.2d 109
 
 , 113 (8th Cir. 1981) (en banc). A party challenging a state statute must show that he is "likely to prevail on the merits" before the court need weigh other factors.
 
 Planned Parenthood Minn., N.D., S.D. v. Rounds
 
 ,
 
 530 F.3d 724
 
 , 732 (8th Cir. 2008) (en banc). The ultimate decision to grant an injunction is reviewed for abuse of discretion, with factual findings examined for clear error and legal conclusions considered
 
 de novo
 
 .
 
 Comprehensive Health of Planned Parenthood Great Plains v. Hawley
 
 ,
 
 903 F.3d 750
 
 , 754 (8th Cir. 2018). The dispute here turns on the district court's legal conclusions.
 

 II.
 

 The Secretary's first contention is that none of the six plaintiffs has Article III standing to challenge the statute's requirement that a voter provide a current residential street address. The plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing standing.
 
 Lujan v. Defs. of Wildlife
 
 ,
 
 504 U.S. 555
 
 , 560, 561,
 
 112 S.Ct. 2130
 
 ,
 
 119 L.Ed.2d 351
 
 (1992). The Secretary posits that because each of the six plaintiffs has a residential street address, the statute has not caused any of them to suffer an injury in fact. The district court thought the Secretary had "raised some legitimate concerns," but concluded that "[t]he burden of having to obtain and produce an ID itself has been found sufficient to confer standing, regardless of whether the Plaintiffs are able to obtain an ID."
 
 See
 

 Common Cause/Ga. v. Billups
 
 ,
 
 554 F.3d 1340
 
 , 1351 (11th Cir. 2009). The court reasoned that all of the plaintiffs were injured in fact by "the requirement to maintain a 'current residential street address,' and thus an interest in real property, and the burden to maintain an ID or supplemental documents to prove he or she has a 'current residential street address.' " The Secretary counters that nothing prevents these plaintiffs from voting either with the tribal identifications they already possess or with new tribal identifications listing their current residential street addresses.
 

 We conclude that at least one of the plaintiffs has standing to raise a facial challenge to the statute. It is true that all six plaintiffs have residential street addresses, but the statute at issue does not merely require a citizen to maintain a residential street address. The statute requires a voter to present a valid form of identification or a supplemental document that "provide[s]" a current residential street address. N.D. Cent. Code Ann.
 

 § 16.1-01-04.1(2). Even where a person has a residential street address, the burden of obtaining a qualifying identification or supplemental document is sufficient to constitute an injury that gives a citizen standing to sue.
 
 Common Cause/Ga.
 
 ,
 
 554 F.3d at 1351
 
 .
 

 In this case, plaintiff Elvis Norquay presented evidence that when the amended complaint was filed, he lived at a homeless apartment complex in Dunseith, but that his tribal identification listed a "prior" address in Belcourt. To vote in the precinct where he currently resides, therefore, Norquay must either obtain a new form of identification with his current residential street address or a supplemental document that includes his current address. The Secretary contends that Norquay can vote either in his current precinct by making a copy of his utility bill, or in his former precinct by mail. Neither option, the Secretary argues, would place a severe burden on Norquay's right to vote. But the severity of the burden is a question relating to the merits, not to Norquay's standing to bring this action. Norquay is injured by the residential street address requirement because he must secure a new form of identification or a supplemental document, and obtaining either would require Norquay to expend time and resources. That burden is sufficient to give him standing to challenge the residential street address requirement and the two other disputed provisions. The option for Norquay to mail a ballot to a precinct where he lived at an earlier date does not eliminate injury, because Norquay is harmed by an inability to vote for representation in the precinct where he currently resides.
 

 III.
 

 On the merits, the Secretary argues that the district court's statewide injunction was improper because the plaintiffs have not mounted a successful facial challenge to any part of the statute. The Secretary also contends that the court's order expanding acceptable valid forms of identification and supplemental documents was unnecessary, because the Secretary was already interpreting the statute to permit those other forms of identification and documents. The plaintiffs respond that the residential street address requirement is unconstitutional on its face, and that statewide relief was appropriate in any event on their as-applied claims. We consider the three challenged portions of the statute in turn.
 

 A.
 

 We conclude first that the plaintiffs' facial challenge to the residential street address requirement likely fails, and that the statewide injunction as to that provision cannot be justified as a form of as-applied relief. Facial challenges are disfavored,
 
 Wash. State Grange v. Wash. State Republican Party
 
 ,
 
 552 U.S. 442
 
 , 449-51,
 
 128 S.Ct. 1184
 
 ,
 
 170 L.Ed.2d 151
 
 (2008), and a plaintiff seeking relief that would invalidate an election provision in all of its applications bears "a heavy burden of persuasion."
 
 Crawford v. Marion Cty. Election Bd.
 
 ,
 
 553 U.S. 181
 
 , 200,
 
 128 S.Ct. 1610
 
 ,
 
 170 L.Ed.2d 574
 
 (2008) (opinion of Stevens, J.).
 

 The plaintiffs argue that the call for a residential street address is "invidious on its face," because it dictates that every voter must have "an interest in property." But the statute does not require a voter to present identification that shows an interest in property. A voter may reside at a street address without having an interest in the property where he resides: Elvis Norquay himself resides at a homeless shelter with a street address. And young adults living with parents and elderly parents living with children need not have an
 interest in property. All that is required is that a voter show where he or she resides. The residential street address requirement furthers North Dakota's legitimate interest in preventing voter fraud and safeguarding voter confidence, so unlike a poll tax, it is not invidiously "unrelated to voter qualifications."
 
 See
 

 id
 
 . at 189,
 
 128 S.Ct. 1610
 
 (opinion of Stevens, J.).
 
 [1]
 

 The plaintiffs next contend that the district court's statewide injunction was appropriate because the residential street address requirement places severe burdens on some Native Americans' right to vote. The district court thought the requirement posed an impermissible legal obstacle because Native American communities often lack residential street addresses. The Secretary disputes whether street addresses are truly lacking in these communities, and complains the district court mistakenly relied on outdated evidence about two counties that had not finished assigning addresses as of 2011. But even assuming that a plaintiff can show that an election statute imposes "excessively burdensome requirements" on
 
 some
 
 voters,
 

 id.
 

 at 202
 
 ,
 
 128 S.Ct. 1610
 
 (internal quotation marks omitted), that showing does not justify broad relief that invalidates the requirements on a statewide basis as applied to
 
 all
 
 voters.
 
 See
 

 Frank v. Walker
 
 ,
 
 819 F.3d 384
 
 , 386 (7th Cir. 2016).
 
 Crawford
 
 does not create an exception to the general rule governing facial challenges: a statute's allegedly unconstitutional application in "some conceivable set of circumstances is insufficient to render it wholly invalid."
 
 United States v. Salerno
 
 ,
 
 481 U.S. 739
 
 , 745,
 
 107 S.Ct. 2095
 
 ,
 
 95 L.Ed.2d 697
 
 (1987). As the lead opinion explained, "even assuming an unjustified burden on some voters," the "proper remedy" would not be "to invalidate the entire statute."
 
 Crawford
 
 ,
 
 553 U.S. at 203
 
 ,
 
 128 S.Ct. 1610
 
 (opinion of Stevens, J.);
 
 see also
 

 id.
 

 at 199-200
 
 ,
 
 128 S.Ct. 1610
 
 .
 

 Here, the plaintiffs have not presented evidence that the residential street address requirement imposes a substantial burden on most North Dakota voters. Even assuming that some communities do not have residential street addresses, that fact does not justify a statewide injunction that prevents the Secretary from requiring a form of identification with a residential street address from the vast majority of residents who have them.
 

 B.
 

 We also conclude that the statute's requirement to present an enumerated form of identification does not impose a burden on voters that justifies a statewide injunction to accept additional forms of identification. The district court found that 4,998 otherwise eligible Native Americans and 64,618 non-Native voters lacked a
 qualifying identification. The court also found that 65.6% of the Native American group were missing at least one of the underlying documents needed to obtain a valid identification from the State. These data, however, leave 513,742 of 583,358 eligible voters in the State, or 88 percent, as to whom the plaintiffs have not shown a lack of qualifying identification. And for the relatively small percentage of eligible voters who lack both a qualifying identification and certain underlying documents, the findings (and the dissent) do not address how many voters attempted to acquire them but were unable to do so with reasonable effort. That is the relevant question for assessing whether a voter is substantially burdened.
 
 See
 

 id.
 

 at 198-99
 
 ,
 
 128 S.Ct. 1610
 
 ;
 
 Frank v. Walker
 
 ,
 
 768 F.3d 744
 
 , 746-48 (7th Cir. 2014). In short, the evidence is insufficient to show that the valid form of identification requirement places a substantial burden on most North Dakota voters.
 

 The plaintiffs contend that even if only a small percentage of voters are burdened by the identification requirement, the statewide injunction must be upheld because the district court found North Dakota charges eight dollars for nondriver's identification cards.
 
 See
 

 Crawford
 
 ,
 
 553 U.S. at 198
 
 ,
 
 128 S.Ct. 1610
 
 (opinion of Stevens, J.);
 
 Harper v. Va. State Bd. of Elections
 
 ,
 
 383 U.S. 663
 
 , 670,
 
 86 S.Ct. 1079
 
 ,
 
 16 L.Ed.2d 169
 
 (1966). The district court relied on the testimony of one witness who said that she was charged a fee to obtain a nondriver's identification card after the 2014 election, on a fee notice on the North Dakota department of transportation website, and on the general statutory fee provision governing operators' licenses.
 
 See
 

 N.D. Cent. Code Ann. § 39-06-49
 
 (2)(a). The general fee statute, however, is governed by a more specific provision that since August 1, 2013, has prohibited the director from charging fees to eligible applicants for nondriver identification cards.
 
 See
 
 id.
 

 § 39-06-03.1(4). And the current website shows-consistent with the statute-that a nondriver's identification card is available without payment of a fee. N.D. Dep't of Transp.,
 
 ID Card Requirements
 
 , https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (last visited July 26, 2019). So even if the State charged a fee for nondriver's identification cards at one point, the statutes did not authorize the fee, and the practice is no longer sanctioned by the department of transportation website. That the State mistakenly collected a fee from one plaintiff in the past does not justify a statewide injunction of the provision governing valid forms of identification.
 

 The statutory requirement that a voter present a valid form of identification does not substantially burden most North Dakota voters and is not invidious on its face. Therefore, an injunction that forbids the Secretary from enforcing the requirement statewide is not warranted. It is unnecessary at this juncture to address whether an identification issued by the Bureau of Indian Affairs is a "valid form of identification" under the terms of the statute.
 

 C.
 

 We likewise conclude that the record is insufficient to justify enjoining the Secretary from enforcing the supplemental documents provision statewide. The district court found that 48.7% of Native Americans who lack a qualifying identification also lack adequate supplemental documents, such that 2,305 Native Americans would not be able to vote in 2018 under the North Dakota statute. But again, these findings do not detail how many voters attempted to obtain a supplemental document and were unsuccessful. Even assuming all 2,305 persons were unable to obtain
 a supplemental document without a substantial burden, moreover, they represent less than 0.5% of all eligible voters in the State. The findings thus do not establish that the statute places a substantial burden on most North Dakota voters, and a statewide injunction against the supplemental document requirement is unwarranted. It is unnecessary at this time to address whether a supplemental document issued by a tribal government is an acceptable document under the terms of the statute.
 

 IV.
 

 The Secretary also appeals a portion of the district court order stating that the Secretary "shall provide clarification as to the meaning of N.D.C.C. § 16.1-01-04.1(5)." The plaintiffs did not seek this relief, and they do not defend this aspect of the injunction on appeal.
 

 The provision in question establishes that a voter who is unable to show a valid form of identification at the polls may mark a ballot and ensure that it is counted by showing a valid form of identification within six days after the election. If the voter cannot return to the polling place with identification before the polls close, then she may show a valid form of identification "to an employee of the office of the election official responsible for the administration of the election before the meeting of the canvassing board occurring on the sixth day after the election."
 
 N.D. Cent. Code Ann. § 16.1-01-04
 
 .1(5). The district court ruled that the Secretary must clarify the quoted statutory language.
 

 To support its clarification mandate, the district court concluded that "
 
 [n]o reasonable person who reads this statute would have a clue as to where and to whom they need to report to present a valid ID
 
 ," and that "[c]ommon sense requires more." The district court, however, cited no evidence of voter confusion over this provision, and common sense suggests why there might be no problem. Any voter seeking to identify the "election official responsible" for administering the election may inquire of election officials at the polls. Given that state law requires training of election officials before each election,
 
 see
 
 id.
 

 § 16.1-05-03, a voter's inquiry eventually should lead to the "election official responsible" for administering the election. The North Dakota Code and the website of the Secretary of State, moreover, show that county auditors typically are the officials responsible for administering elections.
 
 See
 
 id.
 

 § 16.1-01-01(4); N.D. Sec'y of State,
 
 County Election Officials
 
 , https://vip.sos.nd.gov/CountyAuditors.aspx?ptlhPKID=34&ptlPKID=5 ("County election officials, who are primarily County Auditors, are responsible to the Secretary of State for administering state election laws, rules, and regulations.") (last visited July 26, 2019). Without evidence that any voter is unable to identify the appropriate election official to whom identification should be submitted after an election, we are not convinced that there is a sufficient basis to enjoin the Secretary to offer formal clarification of the statute. As a matter of good government and public service, of course, the Secretary may publicize the identity of responsible officials on its website or at the polls.
 

 * * *
 

 Although we conclude that the district court's statewide injunction was not warranted,
 
 Crawford
 
 left open the possibility that a court might have authority to enter a narrower injunction to relieve certain voters of an unjustified burden.
 
 Compare
 

 Crawford
 
 ,
 
 553 U.S. at 199-200
 
 ,
 
 128 S.Ct. 1610
 
 (opinion of Stevens, J.),
 
 with
 

 id.
 

 at 204-05
 
 ,
 
 128 S.Ct. 1610
 
 (Scalia, J., concurring in the judgment).
 
 See
 

 Frank
 
 ,
 
 819 F.3d at 386-87
 
 . The district court in this
 case enjoined entirely the statutory requirements concerning a residential street address, valid form of identification, and supplemental documents. If the court had rejected the request for statewide injunctive relief and required the plaintiffs to proceed with as-applied challenges based on their individual circumstances, then there may well have been time before the most recent election to consider whether narrower relief was justified. That option remains available going forward. We express no view on the merits of any such challenge, and we do not address in the first instance the claims brought in this case under state law and the Voting Rights Act. The district court's order of April 3, 2018, granting a preliminary injunction is vacated, and the case is remanded for further proceedings.
 

 The dissent, relying on a North Dakota department of transportation website, asserts that a prospective voter must present one of five enumerated documents bearing her name to prove residence when obtaining a state identification card.
 
 Post
 
 , at 682, 688-89. The webpage governing "ID Card Requirements," however, allows a person to prove a resident address by furnishing one of nine different documents, including a bank statement, credit card statement, pay stub, or school transcript/report card. N.D. Dep't of Transp.,
 
 Acceptable Proof of Residential Address
 
 , http://www.dot.nd.gov/divisions/driverslicense/docs/proof-of-address-documents.pdf (last visited July 26, 2019); N.D. Dep't of Transp.,
 
 ID Card Requirements
 
 , https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (last visited July 26, 2019). The governing statute requires only that a person provide "satisfactory evidence" of legal presence, and provides that the director of the department may require "proof of residence address," without limiting methods of proof.
 
 N.D. Cent. Code Ann. § 39-06-03.1
 
 (3). The dissent's list, therefore, does not establish that a voter must have an interest in real property.